Ops, that's number 3, rats. Oh, thank you. Next case of the morning, also a matter of great public interest, number 17-50683, Shudde Fath v. Texas Dept. of Transportation, and we'll hear from Mr. Bunch. How do you pronounce that name, Fath or Fath or what? Fath? Shudde Fath. Fath? Fath. Fath. Is that a person? Yes, she'll be celebrating her 102nd birthday in about three months. Does she drive? No, her daughter drives her. So how does she have standing to challenge the intersections project? Well, she rides on Mopac and would face the traffic that this project would deliver onto her. Thank you, Your Honor. May it please the Court, Bill Bunch, on behalf of plaintiff appellants, which include a number of community leaders in addition to Ms. Fath, and organizations adversely affected by this proposed three-part highway extension and expansion project. What is the overarching issue that you're presenting to this Court in this case? I was primarily going to address my argument today to our first two points of error. But I'm talking about from your point of view, not from the point of view of argument. The way you see this case, what is the overarching dispute between you and the other side? I would, forced to choose, I would frame it as do both the CEQ and FHWA rules, as written, actually govern the agency's actions, or do they, in fact, not apply? And you apply the old common law four-factor segmentation test from the Say Barton Creek case and the earlier cases. Okay, I'm positive your opponent will not frame it that way. Okay. I may not know much, but I know that. Right. I'd just like to start out by hitting the standard of review. Since you framed it that way, what is the difference between construction or threat to the environment in a connected way and one that has a cumulative effect? I mean, it occurs to me, if there's a determination that there's no connection, that eliminates any concern about cumulative, because if there's no connection, there can be. I mean, cumulative suggests synergistic relationship between object A and object B. But if the term there is no connection, it virtually follows in the way normal people think, and I'm not accusing anybody of normal thinking in this case. Right. But one would say there cannot be accumulation without connection. Yes, Your Honor, we would disagree with that view. Okay, tell me why. Tell me why in the simplest, non-bureaucratic teased language. Yes. As this Court laid out in the Freddie Offison case and, again, more recently in the O'Reilly case, and as the cumulative actions rule, the single course of action rule by CEQ lays out, there are three separate standards. There's cumulative actions, connected actions, and similar actions. And the agencies, when deciding how to divide up and determine the scope of their studies, has to look at all three of those. Cumulative actions, as is spelled out in Freddie Offison and, again, reiterated in O'Reilly, that's where you have projects that aren't connected to each other, but they're in the same area and they're pending at the same time. With cumulative impacts on a defined... Maybe you've answered my question. Connected, the word connected has nothing to do with environmental concerns. I thought connected meant that this project, environmental concerns, are connected or not connected with these projects. Now, so the question seems to me here that you dispute is that they are connected, but yet you're not challenging the fact that they are connected. You're saying unconnected events, complete without any connection, have a cumulative effect on events that they're not connected with. Your Honor, we're not conceding that they're not connected. We believe that they are. Okay, so that's the error of the... Then I understand it much better if you say that is the error of the assessment, that they concluded that they were not connected. But I didn't understand that to be your challenge. I understood your challenge to be that there was not a cumulative analysis of unconnected events, and that didn't make sense to me. Well, we're saying there was not a cumulative analysis at all. The rules require that they at least look at and determine if there needs to be one, and that in particular with MOPAC intersections... The way I would look at it, if they decide it's unconnected, they don't have to go any further. Now, that may be wrong in the conclusion that it was unconnected, and if that's true, then you need to come in and argue that they've made an error there, not that their analysis was faulty because it failed to make a cumulative analysis. If they failed in their connected analysis, it follows that cumulative would be important. Right. That's the way I would look at it. They don't have to follow. Sometimes they do, absolutely. Connected actions would have cumulative impacts, but unconnected actions can also have cumulative impacts. Well, make me know that. Make me know that something that is completely unconnected with event one has a cumulative effect on... Yes, Your Honor. CLEPI v. Sierra Club is the binding Texas U.S. Supreme Court case. This talk is normal people talk. Okay. So I can understand. Multiple mines that have to be permitted by somebody are in the same area, the same watershed. Highways are in the same watershed, but they're not connected to each other. But they have cumulative impacts because of this defined area that they're taking place in. And what the Supreme Court in CLEPI said is if they're pending before the same agency at the same time with cumulative impacts, you have to study them together, whether or not there's any connection between them. Well, I mean, to me what you said is more or less circular. Because, I mean, I don't see the... The CEQ... I'm going to drop it. You go on with it. Right. The CEQ rules are binding. That's spelled out in the rule and have been generally accepted by the courts. The Federal Highway Rules on segmentation, the one at issue here, 771.111F, is also binding on the Federal Highway Administration. But the defendants did not apply either one of these rules. They did not look at these rules and follow them and apply them when they were making, first, the decision to look at SH-45 Southwest Phase 1 by itself. Which is only funded by state money. As they divided it up, Your Honor, that is correct. It was pending at the same time as the other two before the same agency with cumulative impacts. And the case law and the rules talk about if there's cumulative impacts, it doesn't matter if it's the federal or non-federal actor. You have to study those together. Right. What is the limiting principle here in terms of you're agreeing that it's not the exact same connection, like I drive down Louisiana Street and turn on Dallas Street to get to Smith Street. I don't know if I just said that correctly for Houston or not. But anyway, it's not that connection. It's so what bounds it? In other words, if they're building a road in Austin, we don't care in Dallas. So obviously at some point, even if they are temporally connected, they're not sufficiently geographically connected to matter. What is the limiting principle there? It's being in an ecologically defined region is the word by the Supreme Court in CLEPE. And the rule that then implemented CLEPE, the CEQ rule 1508.25A2. Well, what do you do with, say, Barton Creek? Do you think that's inconsistent with CLEPE? No, Your Honor. The issue, the CLEPE and the cumulative actions issue did not come up in, say, Barton Creek because as the court correctly observed and repeated over and over as a critical factor, the pieces of that proposed outer loop were not pending at the same time. It says that most of them, virtually all of them, were somewhere off in the future, merely speculative or contemplated. Here the facts are the opposite. They're absolutely pending at the same time. Say Barton Creek, however, has a big section on segmentation and applies 771.11F and the rules there are whether it's to ensure meaningful evaluation, let's see, the action in each FONSI shall connect logical termini and be of sufficient length to address environmental matters, have independent utility, and not restrict consideration of alternatives. Now, that's exactly what the district court applied in this case. Your Honor, we disagree completely again. Well, I mean, he certainly articulated every one of those and then applied those criteria to the intersections and to the connecting, you know, with 455, the double lane, whatever. A wonderful aspect of this case is that it gives the court a great opportunity to clarify a great deal of confusion that has emerged in the case law as a result of, say, Barton Creek case. Well, it's funny because as the briefs expressed it, and admittedly we didn't look at every case, but as the briefs expressed it, it is your side that has created the confusion because other circuits have all lined up with, say, Barton Creek. I disagree with that. There's case after case in both our initial brief and our reply brief that apply the rules, the cumulative actions rule and the connected actions rule in CEQ and the anti-segmentation rule itself. Say, Barton Creek, there's two critical elements there that are missed in the case law. It was not an Administrative Procedures Act review on the record. It was a trial. And so the court made some of its own findings based on the evidence presented. And so then you see courts follow that pattern. And rather than apply an Administrative Procedures review to look at the record, look at how did the agency justify the decisions that it made. Did it under State Farm Motor Vehicle Manufacturers, did it consider the proper factors or did it consider improper factors and apply the actual rules. So it was a trial on the merits. It wasn't an APA review. The second thing that everyone misses or a lot of people miss on, say, Barton Creek is if you read it, footnote 15, it recites the relatively new rule at the time. But it then says we don't follow the rule. Because you have to have some piece of what you're looking at be federal on which to then decide if that federal scope is bigger than it was drawn. And there they said there's absolutely no federal piece yet. All the federal pieces are somewhere off in the future. So they said so we're going to fall back on the common law, case law pre-rule where the courts had recognized that sometimes the agencies would front run a project with a piece that's just State and then come back with the federal money later. So say Barton Creek does not apply the Federal Highway Administration segmentation rule. It applies the common law rule. So then we see, for example, in O'Reilly and other cases, a similar thing where the courts are equating the pre-binding rule, segmentation rule, with the case law, with the rule. The rule is far more specific. Let me ask you a simple question. How does this map help you? It shows the two pieces that are federal, the one State, and then that they're bookended with federal projects that are also being pursued in a continuous fashion at the same time. So whereas in, say, Barton Creek, there was a State case and there might have been federal things later, here it's the exact opposite. There was federal all over the place except for this one part in the middle. They are connected. We believe they're connected, Your Honor, yes. But what the court looks at is did the agency apply the rule in deciding that they weren't connected. And we believe the record is crystal clear they didn't even look at either the federal highway rule or the CQ rule. I understand your argument to be quite articulated as you've said it, because I didn't see that you were challenging their argument that environmentally there is no connection between this project and the other projects. And your response was somehow in a vague, futuristic way, you have to speculate to determine whether there will be ever a cumulative effect of this project on the other two projects over here. Here we don't have to speculate. They're all at the same time proposed at the exact same time on this incredibly vulnerable recharge zone shown in blue on the map. The agency itself on the traffic issue, traffic impacts, that element of impacts, they only looked at the cumulative impacts because all of their traffic studies look at all three together. They never even imagine that these three pieces aren't all going to be built at the same time. Had they even imagined that, then they would have looked at the direct traffic impacts of each piece. They never even did that. Jumping over to all of the other environmental impacts, they did the exact opposite. They never looked at cumulative impacts. And they only put on their blinders and looked at direct impacts. In the two pieces that have advanced so far, they started them all three at the same time. They pulled one back. I see that my time is up. You have time for rebuttal. Thank you. All right, sir. Ms. Weber. May it please the Court, I'm Jane Weber for the Central Texas Regional Mobility Authority. I'll be arguing on behalf of all the appellees on this issue of the appropriate framework, issues one and two. And then Matthew Bosloff, representing Texas Department of Transportation, will argue point number three, which is the substantive question of the substantive challenge to the intersections EA. And regarding the US, what is the framework? What is the precise issue presented here? And what happened here, the district court reviewed the intersections EA using the framework that this court articulated in the Save Barton Creek case and determined that the project was properly reviewed in its own NEPA EA. And this court should affirm that decision in exactly the same way that another panel of this court affirmed that same decision on the preliminary injunction stage for four reasons. First, Save Barton Creek is the binding, controlling precedent in this circuit. And the precise question before the district court, the precise question before this court is whether the district court erred in using the Save Barton Creek framework when evaluating whether the agency properly scoped its NEPA review. That's the inquiry. How do the courts in an APA appeal evaluate whether the agency complied with NEPA for purposes of scoping highway projects and in this circuit the binding authority is Save Barton Creek. And it's not just in this circuit. Judge Jones, you... Tell me, what do you see Barton Creek holding? What is the principle that you are relying on? Because they probably disagree already have what the principle of Barton Creek is. Save Barton Creek analyzed the question of whether multiple highway projects must be, is their relation sufficient that multiple highway projects have to be evaluated together in a single NEPA review. Because that's really the question at the end of the day. What did Barton Creek hold? What is its holding? Its holding is that to determine the proper scope of a NEPA review, the courts, the agencies, and therefore the courts reviewing on an arbitrary and capricious standard of review, consider four factors. Do the projects, the project that we're reviewing, does it have logical termini? Does it have independent utility? Does it foreclose future alternatives? And does it irrevocably commit federal funds? Those factors. And those factors are taken from the FHWA, from the FHWA regulation that is, that implements the CEQ regulations for purposes of highway, of determining NEPA scope for highway projects. And that leads me to my second point. Not only is Save Barton Creek the binding precedent in this case, but it was right. The court got it exactly right in Save Barton Creek. Because what's at issue in the highway, in scoping for NEPA purposes, highways have transportation issues, mobility issues, issues that are unique to transportations and highways. And what the FHWA regs do is take the concepts of the CEQ regs, which in a general way, yes, are binding on all agencies. But what they did is take the general regs and make agency-specific regs that implement CEQ for purposes of highway. What I never saw in your briefs was the citation to the idea that the general usually controls over, sorry, that the specific regulation controls over a general. You never cited that principle. And I should have, Your Honor, because that's exactly correct. Well, you should have.  No, Your Honor. Is that that the underlying CEQ principle has some utility, so to speak, here? No, Your Honor, it does not. The FHWA regulations implement the CEQ regs for purposes of scoping highway projects. Do they say that? Where does it say that? Well, that's what they, the Delaware Riverkeeper case talks about that, about the use of the agency-specific regulations. And that's what the Save Barton Creek case did. The CEQ provides for cumulative effect. That is not within the regulations relating to highways. What the courts have actually done, Your Honor, across the board, is in analyzing scoping, what they've done is use the Save Barton Creek test, either articulating the precise verbiage of the FHWA reg or the precise verbiage of the Save Barton Creek, which are different words but the same substantive yardstick. And then they have applied those. What have the courts actually done, really, is the question. And what the courts have actually done and what the district court did here, it's because, you know, backing up, what is Judge Yackel supposed to do? He's supposed to look at what, because this isn't the first NEPA case decided by any federal court. This is not a tabula rasa. Save Barton Creek articulates the proper scope and it's been adopted by circuits nationwide. You are effectively saying that Barton Creek carves out an exception to which the CEPQ does not apply. No, Your Honor. I wouldn't call it an exception. I would call it an implementation for the particular subject matter. Sixty different federal agencies have adopted. If they come in and they say, look, the regulation that you've calculated for these highways is contrary to the NEPQ or CEPQ regulations, you would say that is an irrelevant question because Barton Springs has carved you out of this case and this is our baby. People wrote the environmental regulations applied to roads and highways in this particular case. The CEPQ didn't have anything to do with it. Your Honor, that's exactly what I'm saying because that is exactly what the federal courts have done. They have uniformly implemented the Save Barton Creek test, the FHWA regulations, when determining the scope of a NEPA review of highway projects. Nevertheless, in the light of the law, it's been, I think, fairly explicit that the CEPQ regulations apply to all environmental questions. Yes, Your Honor, they apply to all agencies, but how are they implemented? In agency-specific, in specific subject matter, they are implemented by the agency regs, and that's what happened here. CEQ regs in general, FHWA regs in particular, the Fifth Circuit in Save Barton Creek, and a prior panel of this Court in the preliminary injunction in this case, this is the appropriate yardstick. And what tells us that that's the right thing to do is the complaint in Save Barton Creek, which is in the record here. It appears in the record starting at ROA 132. And if you look at ROA, it actually starts at 107, but if you look at 132 and 111, the complaint in Save Barton Creek uses the phrases that Mr. Bunch says ought to control the analysis of the appropriate scope. Well, I'm sorry, but, you know, a complaint goes by the boards after the case is tried and decided on the merits. Absolutely, Your Honor. But I just wanted to make the point that the Save Barton Creek complaint says these projects have environmental synergy. They have synergistic environmental impacts. Well, let me, but, you know, the Court, I mean, to be quite blunt about it, the Court in Save Barton Creek is applying only the segmentation analysis because there was nothing to accumulate with. Well, the question, no, because they found that all the other projects, they applied the segmentation under 771-111-F, but they concluded that all these other projects were on the drawing boards, not even, you know, no shovel of dirt had been turned yet. And so cumulative was irrelevant to the analysis. Your Honor, I disagree in the Save Barton Creek opinion at 950 Fed Second at 1131. They explained that while the Austin outer loop as a whole was still a twinkle in some engineer's eye and had not, no shovel of earth had been turned, the specific segment three, which is the other part of 45, was under construction. The two projects, the state project and the federal project, were both partially constructed at the same time and they physically actually connected to each other. And the complaint said that's environmental synergy. And what did the Fifth Circuit do? They applied the FHWA regs and articulated the test for scoping. I want to ask you about this question with respect to the word connected. Whenever we define connected in the regulations, it is referring not merely to physical connection. It is referring to environmental connection. Is that right or wrong? Your Honor, I don't believe that's correct. I believe that – What is correct? Well, first of all, you don't need to worry with that because the connected and cumulative CEQ concepts are not applicable under the Save Barton Creek construct. But those two terms – But you did plan they were not connected. Well, we found that they had independent utility. We found that the agency and then the district court approved that the projects at issue 45 and intersections had independent utility. There was not an improper segmentation. So the term connected is an amorphous term that can mean whatever someone who is trying to utilize the term wants it to say. Well, and to some extent – and that is also part of my second point of Save Barton Creek got it right. You know, and you asked him – What do you expect us to understand? Well, Your Honor, Save Barton Creek provides exactly the sort of yardstick that is appropriate when analyzing highway projects. What are the termini? What is the utility? Does it get you from A to B? Standards like do these two roads have environmental synergy? What does that mean? Okay, so how does this map help you? That map just shows you where they are. It doesn't help or hurt anybody. It just shows where the projects are. Okay, well, what would you have me learn from this map? Because it looks like everything is all over this same general aquifer, which is the point that your counsel opposite wants me to get out of it. What would you like me to get out of it? That that's where they lie in Austin, Texas. The Save Barton Creek test and the courts uniformly nationwide look at the independent utility, the logical termini, objective criteria that you can actually evaluate highway projects. What you're saying is that they apply the 771.111F. Yes, Your Honor. Right. Now, in connection with that, I mean, instead of just describing it, I mean, those are all common sense terms. What do you do about Fridtjofsen? Fridtjofsen. Which talks about cumulative impact. Yes. And if this were not a highway project governed by the FHWA regs and the Save Barton Creek framework, then Fridtjofsen might shed some light. But even Fridtjofsen, in a different way, leads to my third point, which is, Judge Jones, you noted it, State Highway 45 is a state project. Only state money is being used to fund it. And also, as of the 15th of May, $50 million of state fundings have already been spent on State Highway 45, which is two-thirds of the total budget. And it's going to be ready for cars to drive on probably about a year from now. So the actual construction is very far along. But even if, going back to the issue, so 45 is a state project. And what that means is that there is no way for it to be subject to NEPA review except for a segmentation analysis. Only if it was improperly segmented under the Save Barton Creek framework can... So the bottom line in your argument is, if the segmentation was properly done, we're done. Exactly, Your Honor. Okay. Exactly. And fourth, that leads to my fourth point, if this court departs from Save Barton Creek and says, gosh, all of those many circuits and many district courts who have been applying this FHWA regs and Save Barton Creek and not also applying the CEQ, Cumulative Action Rule, on top of it, all those people were just too dumb to know that we were supposed to bring this concept in. If you do that, it will upend what is a very well-settled body of law, and it will undo really countless agency decisions. Isn't it a better argument from your standpoint, and I'll be interested to hear the other side's response, but isn't it a better argument to rely on what you did in your brief that if none of the, neither one, because I'm only going to focus on the express and the intersections project, neither one of those two that have actual federal involvement has a finding of significant impact? They both have FONCES, right? Then you don't have to consider cumulative. Well, Your Honor, that's exactly what Mr. Boaslaw is going to talk about. The, and the. Well, is there a law to support that? Well, that's precisely what he's going to talk about is the question of the FONCES, and it's. I'm asking you from your, I thought you cited cases that said that if a particular project, the segmented intersections project, for instance, has no significant impact, then it is not legally necessary to consider cumulative impact with other projects and circumstances. Well, Your Honor. Am I wrong? No, you are correct, but the, and here's where sometimes there's just some confusion, is in the NEPA verbiage, there are two, there's cumulative actions and cumulative impacts. And sometimes those get conflated. Cumulative actions is what we've been, is the, say, Barton Creek question. Actions are projects. Okay, and so this is a segue into your colleague. Yes. Who's going to talk about issue number three. Okay. And the question of the cumulative impacts analysis within the intersections EA. I see. May it please the Court. Matthew Boseloff for the Texas Department of Transportation. The environmental assessment for the MOPAC intersections project satisfied the requirements of NEPA. Its consideration of cumulative impacts was not arbitrary and capricious. The EA concluded that the project will cause no direct or How can you say it's going to cause no impact when you look at this? Maybe this is why you all don't want me to look at this map, but it's kind of hard to see this road going right over this aquifer and all these little valleyways and tributaries and all of that and not think there's going to be some impact. Right, Your Honor. Well, the recharge zone of the Edwards Aquifer lies directly in the center of Austin, Texas, so it's a highly urbanized setting already. The project, the intersections project is at the location of an existing highway already and that's very limited in scope. All it's doing is changing the existing intersections of two roadways and reconfiguring them. Could that actually make the environment better because you don't have everybody stalled out on the roadways like they always are in Austin? Absolutely. And in addition to that, the project is putting in place updated best management practices and updated design criteria that the scientific findings in the environment So you're saying there's already a messed up region here in the middle of Austin and you're kind of making it a little less messy and so that's why there's no impact. Absolutely. It's not like we're walking into the Everglades and building a highway. Absolutely not, Your Honor. The administrative record included detailed findings over the last decades of water quality collected by the City of Austin at Barton Springs and these decades of scientific analysis show that in many cases declining trends and contamination that is associated with roadways. And so basically what the... So we should have more roadways. It's good for the environment. Well, compared to other factors that contribute to water quality and updating roadways is a good thing because it puts in place new design requirements, new detention ponds that help water quality and that was exactly what the scientists who researched this, who this court and the court below gave deference to in those findings. So the mitigation techniques are what make the total impact nothing? That's part of it. As well the benefit to when a car drives through more quickly, you don't have all the problems of cars sitting there idling on the roadway? Right, Your Honor. That's correct. Those are some aspects of that. And again, this is in a highly urban setting and there's already a roadway existing there. In addition, as opposed to... Did your environmental impact statement include air quality as well as water quality? No, Your Honor, because the City of Austin is an attainment area and so there was no requirement to do an air quality analysis and opposing counsel doesn't argue otherwise. When we talk about the impact on the environment, that is to make human conditions more acceptable, I suppose is some broad definition. What are we considering the environment to be in this case? Several different resources. The cumulative impacts analysis, several different resources. Like what? Water quality, endangered species, historic sites, noise, and each of these was outlined in the cumulative impacts analysis which in turn refers to other technical miranda in the environmental assessment. Biological memos, water memos, geologic memos, all of these found there to be no direct impact and no indirect impact from the project. And as this Court has held in other cases, when reviewing a NEPA analysis under arbitrary and capricious standard, we're governed by the rule of reason. And essentially what opposing counsel is asking the parties to do is a pointless task that will not inform the analysis here. And they cite no authority to the contrary. They rely on Friedhoff's decision, but in the three decades since that case was decided they don't point to a single case in which any court has required the mechanical application of that case, especially not in the facts of this case where there are no direct or indirect impacts. The tech thought followed guidance from the Office of the General Counsel from FHWA which says generally if a project does not cause direct or indirect impacts, a cumulative impact analysis of the resource need not be done. And there are several cases out of the Ninth Circuit that have directly addressed this issue and have essentially blessed the exact process that tech thought has done in this case. In addition, as opposing counsel alluded to, the traffic analysis and the noise analysis did incorporate as baseline data the existence of other projects, projects that were planned for the future, including 45 Southwest. And the study of the water quality in – I see my time is up. May I finish my sentence? You can finish it. And the study of water quality at Barton Springs incorporates decades of existing projects. So that incorporates the baseline data which this court has said in Piedmont Heights is sufficient to meet the statutory minima under NEPA. All right. Thank you, sir. Okay, Mr. Bunch. Thank you, Your Honor. Where is the government in this case, the federal government? Yes, Your Honor. That's a great question. Tech thought is one of the first states that has received full delegation of the Federal Highway Administration powers, and so it's standing in the shoes of exactly the Federal Highway Administration in this case. So we give it some deference? You give it some deference on using its judgment. You do not give it deference in terms of interpreting the CEQ rules. I get that. Yes. Moving to this subject of this sort of no impact versus, well, of course there's impact, we would give some deference to the conclusion of no impact. You would. If they had followed the correct methodology, and this is what the whole state part. This is back to your footnote 15. No, this is on the cumulative impacts issue, not the segmentation issue. Okay. So you're on issue three. Our third point, to reach a FONSI, finding of no significant impact, you have to look at cumulative impacts of the other projects, not just the ones pending but also reasonably foreseeable. They did not do that. But the problem I have is if we begin at number 42 and we add zero, we're still at 42. So if the number is zero, I don't really understand why it has to be added to another number because I'm not very good at math, but I know when you add zero to some other number, it doesn't make that number bigger. We would respectfully submit, as you observe, you can't build a highway, and we believe it was misrepresented. They're not just fixing intersections. They're adding on just the two-mile stretch three new highway lanes each way, six new paved lanes. They're adding a tremendous amount of pavement. But if these are greener highways than we had in an already messed-up environmental area, then does that make the no impact? This is where they refuse to look at the expertise of the sister agency, U.S. Fish and Wildlife Service, and this is in our brief. In 2013, the U.S. Fish and Wildlife Service listed the Austin Blind Salamander as endangered and specifically pointed to urbanization, highways, and highway pollution as the major threat to the survival of the species in this exact area. And their analysis was all about cumulative impacts and pavement. As you add pavement, you add pollution and erosion. Okay, this is going over the water, though. Pardon? Tell me how the highway relates to the water. How far above it is it? The aquifer is just another, you know, straight down in caves and sinkholes, directly under where they're building, 100 feet down to the water table. Okay. And the water flows to Barton Springs in less than two days from this area. Okay. Okay. So why do we assume, though, that people driving on a highway that now will be able to go faster and not have as much time to throw litter out the window and all this kind of stuff, it's going to make it worse? I mean, I understand that you don't want a lot of pavement, but that seems like a sort of generic concept that you're saying has to be accepted, whereas they're arguing that this makes things better. This is already a messed-up area, and we're making it better. We're not walking into a pristine place and doing better. When you're paving over nature, you're not making it better. The U.S. Fish and Wildlife Service analysis — Excuse me, sir. Yeah. But, you know, I think most of us have been on this part of Mopac at some point, and it's not as if nature is on either side of the highway there, even though it's technically the recharge zone. There is that one part that's the set-aside area for the Gold Cheek Warbler, if I recall correctly. But there are houses, and there are strip malls, and there are gas stations along every inch of this area. And what you're talking about is two overpasses and taking out pavement that already exists because you're condemning on the malls on either side and expanding the amount of concrete. Your Honor, they're adding highway lanes. They're turning in — They're adding highway lanes. The whole southern part of that highway is largely rural. The three-and-a-half-mile piece is entirely new highway across recharge zone through preserves, the green space. If I could jump back to Sabarton Creek real quick. I see my time's almost up. We are not asking you to step up in Sabarton Creek. We're asking you to read it carefully and recognize that it's not an administrative review case. It did not apply the state farm test to see if the proper factors were followed and the improper factors were not considered when the decisions to split it up happened. Opposing counsel misstated that one of those two projects in Sabarton Creek was federal. They were not. They were both state. The federal was all out into the future, which is why, in footnote 15, the court said very clearly, we're not applying the federal highway rule. We're applying the pre-federal rule common law test, which is different. They wasted two or three pages of discussion on independent utility, reasonable alternatives, and whatever the third criterion was. Your Honor, they did. But the rule says. That's all dicta? No. But the rule is more specific and has two parts on independent utility. The endpoints have to make sense and it has to be of sufficient length to evaluate impacts on a broad scope that does not exist in the four-factor test. And because that is fundamentally different and they didn't apply the rule, they violate the state farm arbitrary and capricious test. And similarly, on the independent utility test, there is an economic impact component, which was not applied. Thank you. Okay. Thank you very much.